IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                          CRIMINAL ACTION NO. 2:20-cr-00187

CARLOS HUMBERTO MENDEZ-SANTOS

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant Carlos Humberto Mendez-Santos' ("Mendez-Santos") Motion to Dismiss Indictment. For the reasons that follow, the motion is **DENIED**.

I. BACKGROUND

Mendez-Santos is a citizen of Honduras born in that country in 1987. On June 28, 2004 Mendez-Santos illegally entered the United States near Nogales, Arizona. [ECF No. 4]. Shortly thereafter, ICE agents issued Mendez-Santos a notice to appear in immigration court to determine whether he should be removed. [ECF No. 34, Ex. 1]. At this time, Mendez-Santos was represented by Reverend David Brooks. [ECF No. 34, at 3]. Rev. Brooks moved for a change of venue to Baltimore, Maryland so that Mendez-Santos could be closer to his mother. The Immigration Judge granted that motion and a new hearing date was set for December 7, 2004 at the Immigration Court in Maryland. [ECF No. 34, Ex. 3]. According to the record of that hearing [ECF

1

No. 34, Ex. 4] Mendez-Santos appeared in person with his mother and counsel. At the hearing, Rev. Brooks moved to withdraw as counsel and for a continuance. [ECF No. 34, Exs. 4, 5]. Both requests were granted and the hearing was reset for February 8, 2005. [ECF No. 34, Exs. 4, 6]. During the December 7 proceeding, Mendez-Santos was served with written notice of the February 8, 2005 hearing. [ECF No. 34, Ex. 7]. Mendez-Santos failed to appear at the February 8 hearing and Immigration Judge Jill Dufresne entered an order of removal. [ECF No. 8]. Judge Dufresne found that Mendez-Santos had notice that failure to appear would result in an order of removal. She further found that Mendez-Santos had admitted to the factual allegations contained in the notice to appear by stipulating as such in his motion to change venue. *Id.*

Based on the order of removal, Field Office Director Calvin McCormick issued a warrant for removal/deportation. [ECF No. 34, Ex. 9]. Mendez-Santos was not arrested until March 26, 2009. At his arrest, Mendez-Santos was offered a list of free legal representation and he signed to acknowledge receipt of this list. [ECF No. 34, Ex. 10]. On April 17, 2009, Mendez-Santos returned to Honduras.

Mendez-Santos was next arrested on October 6, 2020. The West Virginia Fire Marshal conducted an inspection of his workplace and referred their concerns about the employer's use of undocumented immigrant labor and unlicensed electricians to ICE. [ECF No. 1]. According to the ICE affidavit attached to the criminal complaint, Mendez-Santos was interviewed by ICE agents and submitted to fingerprint and biometric identity analysis. During that interview, he admitted that he was a Honduran citizen and national who was illegally present in the United States. *Id.*

Mendez-Santos now stands charged with illegal reentry in violation of 8 U.S.C. § 1326(a). Mendez-Santos argues that I should dismiss the criminal indictment because his prior removal order was invalid. Mendez-Santos states that the Baltimore Immigration court did not have jurisdiction to enter a removal order because "there is nothing that shows that the Defendant ever received notice of his immigration hearing in February of 2005." [ECF No. 32]. He further argues that the subsequent proceedings denied him a meaningful right to counsel; that he has been denied the opportunity to exhaust his administrative remedies in violation of due process; and that he has been denied the opportunity to seek asylum. The Government responds that Mendez-Santos has failed to satisfy any of the elements necessary to successfully challenge the underlying removal.

## II. STANDARD OF REVIEW

A criminal defendant who has been charged with violating the Criminal Illegal Reentry Statute has a due process right to collaterally challenge the underlying removal order. The District Court may hear a collateral attack in the context of a new indictment for reentry and consider whether defects exist in an Immigration Court's removal order proceedings. *See* 8 U.S.C. § 1326(d). Section 1326(d) was Congress' response to the Supreme Court's opinion in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In that case, the Supreme Court held that a removal order may not be treated as conclusive proof of an element of a criminal offense where the removal proceeding did not comport with notions of due process. *Mendoza-Lopez*, 481 U.S. 834. Section 1326(d) codified the principle that failures of due process which may occur during proceedings in the Immigration Court that "would make it

fundamentally unfair to rely on a removal order coming out of that proceeding." *United States v. Moreno-Tapia*, 848 F.3d 162 (4th Cir. 2017).

In a criminal proceeding under 8 U.S.C. § 1326, a noncitizen defendant must demonstrate each of the following elements in order to successfully challenge the validity of the deportation order: (1) the noncitizen exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the noncitizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d).

The Fourth Circuit Court of Appeals has held that in order to satisfy the fundamental unfairness prong the defendant "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005). The Fourth Circuit has suggested that a preponderance standard is to be applied when determining whether defendant has satisfied each of the elements. *See United States v. Martinez-Amaya*, 67 F.3d 678, 682 n.5 ("[W]e need not decide the standard of proof which a [noncitizen] must satisfy in such a collateral attack. Yet the application of a 'preponderance of the evidence' standard of proof to an [noncitizen]'s collateral attack upon a prior deportation seems appropriate to us, in light of the fact that a deportation proceeding is civil in nature.").

4

### III. ANALYSIS

The main thrust of Mendez-Santos' motion is his collateral attack on his prior removal order. Before addressing that attack, however, I must first address the argument that the Immigration Court lacked subject matter jurisdiction.

#### A. Immigration court's jurisdiction to enter removal order

Mendez-Santos argues that the Baltimore Immigration Court did not have the jurisdiction to enter a removal order against him in 2005 because he did not have proper notice of the hearing. The Government does not squarely address this argument. Our Court of Appeals has recently cast doubt on the notion that subject matter jurisdiction of an Immigration Court is fair game for a collateral appeal. *United States v. Cortez*, 930 F.3d 350, –57(4th Cir. 2019) ("there is no freestanding rule allowing collateral attacks based on a lack of subject matter jurisdiction.").

Even assuming that Mendez-Santos can properly attack the Immigration Court's jurisdiction, I find flaws with his reasoning. Jurisdiction is not a function of notice served upon the noncitizen. Rather, federal regulations promulgated by the Attorney General dictate when and how jurisdiction vests with the Immigration Court. Title 8 § 1003.14(a) of the Code of Federal Regulations provides, "[j]urisdiction vests, and proceedings commence, when a charging document is filed with the Immigration Court by the Service." A "charging document" is the "written instrument which initiates a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13. "For proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by [noncitizen]." *Id.*

5

Section 1229(a) of Title 8 of the United States Code governs what information is required to be contained within the Notice to Appear that is served to the noncitizen but does not speak to the court's jurisdiction. Furthermore, Fourth Circuit precedent supports the notion that 8 C.F.R. § 1003.14 and § 1003.15 "control when and how subject matter jurisdiction vests in an immigration court." *United States v. Savaria-Chavez*, 349 F. Supp. 3d 526, 532–33 (W.D. Va. Nov. 14, 2018). To challenge the Immigration Court's subject matter jurisdiction, Mendez-Santos would therefore need to allege that there was some deficiency with the notice filed in the Immigration Court. He has not. Instead, he argues that he never had sufficient notice of his hearing. As explained more fully below, the record is clear that Mendez-Santos appeared in person for his initial hearing and was personally served with notice of the subsequent proceeding held in February, 2005. Even if deficient notice were the proper ground on which to challenge the Immigration Court's subject matter jurisdiction, that argument would fail in this case. Accordingly, the motion to dismiss the indictment for lack of subject matter jurisdiction is **DENIED**.

### B. Mendez-Santos' collateral challenge to the underlying removal order.

Mendez-Santos also makes a collateral challenge to the underlying removal order. For his challenge to succeed, he must satisfy each of the elements under 8 U.S.C. § 1326(d). The first prong requires Mendez-Santos to demonstrate that he has exhausted his administrative remedies to seek relief against the original order of deportation and removal. 8 U.S.C. § 1326(d)(1). A noncitizen may appeal a removal order to the Board of Immigration Appeals by filing a motion to reconsider the judgment within 30 days of the mailing of the judgment or, at any time, by filing a

motion to reopen proceedings. 8 C.F.R. § 1003.2. Mendez-Santos has made no showing that he has made any appeal whatsoever and concedes as much in his motion. Instead, he argues i) that he has never had a fair chance to do so, in part because he is presently in custody; and ii) that the rule described in *United States v. El-Shami*, 434 F.3d 659, 663 (4th Cir. 2005) excuses him from satisfying this prong. In *El-Shami*, the Court held that the defendant satisfied the first two § 1326(d) elements because the INS never served him with notice of the removal hearing, so he did not appear and was never informed of his appeal right. *Id.*

I am unpersuaded by either of these lines of reasoning. At any point from 2005 to 2009—when he was removed to Honduras—Mendez-Santos could have moved for a reopening of his 2005 case (including at his 2009 removal hearing). The rule in *El-Shami* does not control here, either. It is apparent from the record that Mendez-Santos was served notice of his first removal hearing because it is undisputed that he appeared in person on December 7, 2004 before the Immigration Court in Baltimore. At that time, he moved for a continuance which was granted and set for February 8, 2005. [ECF No. 34, Ex.7]. Mendez-Santos cannot credibly claim that he did not have notice of the February 2005 hearing when he was in front of the Immigration Judge who announced its date and also personally served him with written notice. *Id.* Mendez-Santos has failed to carry his burden to show exhaustion of his administrative remedies.

Next, § 1326(d)(2) requires Mendez-Santos to show that he has been deprived of an opportunity for judicial review. His argument here is also that he was deprived of proper notice of his removal hearing and, by extension, the meaningful chance to

seek judicial review of the order. Mendez-Santos states that the removal was unfairly entered against him *in absentia* when he was "[17 years old] at the time" and "had no resources or access to the information to ensure his own appearance at [c]ourt." For the reasons, I just explained, Mendez-Santos was served with proper notice of his removal hearing. Mendez-Santos appeared with counsel and his mother before the Immigration Court on December 7, 2004. He was released on bond pending his next appearance. At the February, 2005 hearing, Mendez-Samtos was removed *in absentia*. Judge Dufrense found that "respondent was provided with notification of the time, date, and location of the respondent's removal hearing." [ECF No. 34, Ex. 8]. She further found that Mendez-Santos was on notice that his failure to appear would result in a removal entered in his absence. *Id*.

I find that Mendez-Santos had notice of the proceedings but simply failed to appear and has offered no explanation as to why and has never sought administrative or judicial review of that decision until April 29, 2021. Because he can point to no procedural defect with the proceeding, he is unable to establish that he was deprived of a chance for judicial review.

Finally, Mendez-Santos has failed to show that the entry of the removal order was fundamentally unfair. 8 U.S.C. § 1326(d)(3). While Mendez-Santos has provided no explanation for his failure to appear at his removal hearing, he has also not shown that he suffered any prejudice or fundamental unfairness had he attended. The Government points out that prior to his December 7, 2004 appearance, Mendez-Santos had, through counsel, stipulated that he admitted to all the allegations

8

contained in his notice to appear when he moved for a change of venue to Baltimore. [ECF No. 34, Ex. 2].

### C. Asylum and right to counsel

Mendez-Santos briefly notes that he has never been given the opportunity to seek asylum. While it is not clear why Mendez-Santos believes this is relevant to this Motion, I can find nothing in the record to indicate that Mendez-Santos has ever taken any step toward seeking asylum. Mendez-Santos has not been deprived of the right to seek asylum and I find no defect in prior proceedings or infringement of his asylum rights.

Lastly, Mendez-Santos states that when he was arrested in 2009, he was denied the right to seek effective assistance of counsel in violation of due process. This argument is belied by Government's Exhibit 10, a list of free legal service providers that Mendez-Santos acknowledged with his signature. I find that Mendez-Santos did have the chance to obtain counsel when he was arrested and subjected to removal in 2009.

### IV. CONCLUSION

For the reasons contained in the foregoing memorandum opinion and order, the Motion to Dismiss Indictment [ECF No. 32] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: May 18, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE